1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9    St. Paul Fire & Marine Insurance          )    No. CV-11-1954-PHX-SMM
     Company, Charter Oak Fire Insurance        )
10   Company, and Travelers Indemnity           )
     Company of America,                        )
11                                              )    **ORDER**
                    Plaintiffs,                 )
12                                              )
     v.                                         )
13                                              )
     Lexington Insurance Company,               )
14   American Home Insurance Company,           )
     Commerce & Industry Insurance              )
15   Company, and Liberty Mutual Insurance      )
     Company,                                   )
16                                              )
                    Defendants.                 )
17                                              )
     _____        )
18                                              )
     Zurich American Insurance Company,         )
19                                              )
                    Cross-Claimant,             )
20                                              )
     v.                                         )
21                                              )
     Ohio Casualty Insurance Company,           )
22   American Safety Indemnity Company,         )
     Lexington Insurance Company,               )
23   American Home Insurance Company,           )
     Commerce & Industry Insurance              )
24   Company, and Liberty Mutual Insurance      )
     Company,                                   )
25                                              )
                    Cross-Defendants.           )
26                                              )
     _____        )
27                                              )
                                                )
28                                              )

1   American Home Insurance Company and )
2   Commerce & Industry Insurance )
    Company, )
                        )
3         Counter/Cross-Claimants, )
                        )
4   v. )
                        )
5   St. Paul Fire & Marine Insurance )
    Company, Charter Oak Fire Insurance )
6   Company, Travelers Indemnity Company )
    of America, Ohio Casualty Insurance )
7   Company, Maryland Casualty Company, )
    Zurich American Insurance Company, )
8   and American Guarantee & Liability )
    Insurance Company, )
9                         )
        Counter/Cross-Defendants. )
10                         )
11   ─────────────────────────────── )
    Lexington Insurance Company, )
12                         )
        Counter/Cross-Claimant, )
13                         )
14   v. )
                        )
15   St. Paul Fire & Marine Insurance )
    Company, Charter Oak Fire Insurance )
16   Company, Travelers Indemnity Company )
    of America, Ohio Casualty Insurance )
17   Company, Maryland Casualty Company, )
    Zurich American Insurance Company, )
18   and American Guarantee & Liability )
    Insurance Company, )
19                         )
        Counter/Cross-Defendants. )
20   ───────────────────────────────

21       For the reasons that follow, the Court declares the remaining parties' respective

22 obligations, but declines to award further declaratory relief.

23                     **BACKGROUND**

24       The origins of this declaratory judgment action can be traced back to a residential

25 housing development (the "Development") constructed in Surprise, Arizona between 1996

26 and 2005. The general contractor was Del Webb Home Construction, Inc. ("DWHC"), a

27 wholly owned subsidiary of Del Webb Communities, Inc. ("DWCI"), which is itself a wholly

28 owned subsidiary of Del Webb Corp. (collectively "Del Webb"). DWHC entered into

1   contracts with six different subcontractors for the provision of various construction tasks.

2   The contracts required the subcontractors to maintain commercial general liability ("CGL")

3   insurance with two million dollars in policy limits and to endorse Del Webb as an additional

4   primary insured. (E.g., Docs. 221-1 at 5-6, 15, 25-26; 226-2 at 18; 265-3 at 17-18, 72-73, 99.)

5   While allowing for the requisite CGL limits to be split between primary and excess policies,

6   the contracts stated: "It is expressly agreed that any other insurance covering [Del] Webb is

7   excess over and non-contributing with [the subcontractor's] commercial general liability

8   insurance." (Id.)[1]

9       On January 28, 2008 hundreds of Development homeowners served DWCI, the entity

10   that sold the homes, with notice pursuant to Arizona's Purchaser Dwelling Act, Ariz. Rev.

11   Stat. § 12-1361 et seq., alleging construction defects that implicated several subcontractors.

12   On the same day, hundreds of other Development homeowners served DWCI with a demand

13   for arbitration regarding analogous construction defects. The notice of construction defects

14   eventually matured into a civil action, Glen Zelkind et al. v. Del Webb Communities,

15   Maricopa Superior Court Case No. CV2008-3089, that has progressed to trial. The

16   arbitration, however, was resolved in favor of the homeowners resulting in a $13.5 million

17   award against Del Webb, which Del Webb appealed. As of January 3, 2014, the defense

18   costs in the civil action were about to surpass the amount of the arbitration award.

19       On October 6, 2011, three insurers that were defending Del Webb in the underlying

20   actions filed the instant action against 13 insurers who insured one or more subcontractors

21   and/or Del Webb at various times but refused to contribute or contributed less than their

22   share of defense costs. Plaintiffs sought a declaration of defense duties and a declaration of

23   entitlement to equitable contribution. During nearly three years of proceedings, the complaint

24   _____

25   [1] Because the parties' summary judgment motions involved only three of the six
26   subcontractors, the contracts for the other three subcontractors are not before the Court.
    However, the contracts that were submitted span several years and use virtually
27   indistinguishable language to describe the subcontractor's insurance obligations. Since no
    party has claimed that their respective insureds' contracts were materially different, the Court
28   cautiously proceeds with this characterization of the contractual language.

1   has been amended twice, 19 different insurers have appeared, and six Defendants filed

2   counterclaims and crossclaims for relief identical to that sought by Plaintiffs.

3       The Court and the parties agreed at the April 16, 2012, Rule 16 conference to

4   bifurcate the proceedings so that the first round of dispositive motions would resolve as a

5   matter of law any disputes about whether a party had a duty to defend under one or more

6   policies. (Docs. 97; <u>see</u> 319 at 2.) Four of the nineteen insurers had been dismissed (Docs.

7   87; 358) before the parties participated in a settlement conference that resulted in the

8   dismissal of another three parties and 32 claims, counterclaims, and crossclaims (Docs. 366;

9   374; 375; 379; 380). Five dispositive motions were timely filed: one was withdrawn, two

10  were denied as moot pursuant to settlement, and two were decided by the Court. Only two

11  parties filed challenges to their duty to defend under any of their polices (Docs. 258; 267),

12  but neither challenge was successful (Docs. 344; 350).

13                                  **LEGAL STANDARDS**

14      "In a case of actual controversy . . . any court of the United States . . . *may* declare the

15  rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.

16  § 2201(a) (emphasis added). The declaratory judgment case or controversy "requirement is

17  identical to Article III's constitutional case or controversy requirement." <u>American States Ins.</u>

18  <u>Co. v. Kearns</u>, 15 F.3d 142, 143 (9th Cir. 1994). This prerequisite is satisfied where "there

19  is a substantial controversy, between parties having adverse legal interests, of sufficient

20  immediacy and reality to warrant the issuance of a declaratory judgment." <u>Maryland Cas. Co.</u>

21  <u>v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941) (citing <u>Aetna Life Ins. Co. of Hartford</u>

22  <u>v. Haworth</u>, 300 U.S. 227, 239-42 (1937)); <u>Principal Life Ins. Co. v. Robinson</u>, 394 F.3d 665,

23  671 (9th Cir. 2005) (discussing ripeness).

24      The controversy must not only be "real and substantial," but must also be susceptible

25  "of specific relief through a decree of a conclusive character" in the form of "an immediate

26  and definitive determination of the legal rights of the parties . . . upon the facts alleged."

27  <u>Haworth</u>, 300 U.S. at 241 (distinguishing "an opinion advising what the law would be upon

28  a hypothetical state of facts"). "The litigant must clearly and specifically set forth facts

1   sufficient to satisfy" the case or controversy requirement, <u>Whitmore v. Arkansas</u>, 495 U.S.

2   149, 155 (1990) (discussing standing), "for each form of relief sought." <u>Friends of the Earth,</u>

3   <u>Inc. v. Laidlaw Envtl. Serv., Inc.</u>, 528 U.S. 167, 185 (2000) (same).

4       "So long as the court's exercise of jurisdiction over the suit 'passes constitutional and

5   statutory muster,' the district court has discretion to determine whether maintaining

6   jurisdiction over the declaratory action would be appropriate." <u>Allstate Ins. Co. v. Herron</u>,

7   634 F.3d 1101, 1107 (9th Cir. 2011) (quoting <u>Gov't Emp. Ins. Co. v. Dizol</u>, 133 F.3d 1220,

8   1223 (9th Cir. 1998) (en banc)). The Ninth Circuit "allow[s] district courts broad discretion

9   as long as it furthers the Declaratory Judgment Act's purpose of enhancing 'judicial economy

10  and cooperative federalism.' " <u>R.R. Street & Co. v. Transp. Ins. Co.</u>, 656 F.3d 966, 975 (9th

11  Cir. 2011) (quoting <u>Dizol</u>, 133 F.3d at 1224).

12      "When declaratory relief will not be effective in settling the controversy, the court

13  may decline to grant it." Fed. R. Civ. P. 57 advisory committee notes (1937). If the sought

14  declaration neither "serve[s] a useful purpose in clarifying and settling the legal relations at

15  issue" nor "terminate[s] and afford[s] relief from the uncertainty, insecurity, and controversy

16  giving rise to the proceeding," then "the court should decline to render" declaratory relief.

17  <u>Delno v. Market St. Ry. Co.</u>, 124 F.2d 965, 968 (9th Cir. 1942) (quoting Edwin Borchard,

18  <u>Declaratory Judgments</u> 299 (2d ed. 1941)).

19                                    **DISCUSSION**

20      The parties to this action all issued one or more of three different types of CGL

21  policies that insured Del Webb. First are the parties that issued CGL policies directly to Del

22  Webb. Plaintiff/Counter-Defendant St. Paul Fire & Marine Insurance Company ("**St. Paul**")

23  issued two CGL policies directly to Del Webb (Doc. 197 ¶ 29), which included primary and

24  excess insurance, that were subject to an "other insurance" provision stating in relevant part:

25  "We have no duty to defend . . . if your Basic Insurance, or any other insurance, has a duty

26  to defend . . . . We'll assume the duty to defend . . . only if[] . . . your Basic Insurance, or any

27  other insurance, doesn't cover" liability. (Doc. 221-3 at 130, 164.) Similarly, Cross-

28  Claimant/Cross-Defendant Zurich American Insurance Company ("**Zurich**") and Cross-

1   Defendant American Guarantee & Liability Insurance Company ("**AGLIC**") both issued

2   primary CGL policies to Del Webb. (Docs. 197 ¶ 28; 203 ¶ 28.)

3          Next are the parties that issued primary CGL policies designating Del Webb as an

4   additional   insured.   First,   "Tanner"—an   entity   of   unknown   origin,   form,   and

5   significance—was issued policies by **St. Paul** as well as by Plaintiffs/Counter-Defendants

6   Charter Oak Fire Insurance Company ("**Charter Oak**"), and Travelers Indemnity Company

7   of America ("**Travelers**"). (Doc. 197 ¶ 29-30.) As to the six subcontractors: Schuck & Sons,

8   Inc. was insured by both **Travelers** and Defendant/Counter-Claimant/Cross-Claimant/Cross-

9   Defendant Lexington Insurance Company ("**LIC**"). (Docs. 114 ¶ 24; 145 ¶ 24; 197 ¶ 30.)

10  Atrium Door & Window Company of Arizona, formerly known as Masterview Window

11  Company, LLC ( collectively "Atrium") was insured by **Travelers** as well as **Zurich**. (Docs.

12  197 ¶¶ 24, 30; 203 ¶ 24.) Arizona State Plastering, Inc. was insured by Defendants/Counter-

13  Claimants/Cross-Claimants/Cross-Defendants   American   Home   Insurance   Company

14  ("**AHAC**") and Commerce & Industry Insurance Company ("**CIIC**"), and Defendant/Cross-

15  Defendant Liberty Mutual Insurance Company ("**LMIC**"). (Docs. 114 ¶ 24; 145 ¶ 24; 197

16  ¶ 24; 204 ¶ 11.) Design Drywall, Inc., was insured by Cross-Defendants Maryland Casualty

17  Company ("**MCC**") and American Safety Indemnity Company ("**ASIC**"). (Docs. 197 ¶ 24;

18  203 ¶ 24; 206 ¶ 24.) Sharico Enterprises was insured by **ASIC** and Cross-Defendant Ohio

19  Casualty Insurance Company ("**OCIC**"). (Docs. 197 ¶ 24; 204 ¶ 11; 206 ¶ 24.) Last,

20  Diversified Roofing, Inc. was insured by **LIC**. (Docs. 114 ¶ 24; 145 ¶ 24.)

21         The third type of CGL policies provided excess, as opposed to primary, coverage.

22  Only one party, **AGLIC**, issued policies of this type, and only to one subcontractor, Atrium.

23  (Docs. 197 ¶ 24; 203 ¶ 24.) Each excess policy was attached to a primary policy issued by

24  **Zurich** to Atrium and named as insured: "Any person or organization included as an insured

25  in the underlying insurance." (Doc. 221-1 at 118, 125, 155, 162, 196-97, 204.) The

26  underlying **Zurich** policies endorse as additional insureds: "All persons or organizations

27  where required by written contract." (Doc. 221-3 at 23, 56, 63.) Like the other contracts

28  before the Court, the Atrium contracts state: "The [CGL] policy shall be endorsed to include

1  Del Webb . . . as additional insureds, with respect to any claims losses, expenses, or other

2  costs arising out of this [][c]ontract, and shall be endorsed as primary coverage with respect

3  to any other insurance which may be carried by [Del] Webb." (Doc. 221-1 at 5, 15, 25-26.)

4        The relations of the parties to one another are a complex patchwork of claims,

5  counterclaims, and crossclaims. First, **St. Paul**, **Charter Oak**, and **Travelers** (collectively

6  "**Plaintiffs**") have claims against **LIC**, **AHAC**, and **CIIC** (collectively "**AIG**") and also

7  **LMIC**. (Doc. 197.) Next, **AIG** has counterclaims against **Plaintiffs**, and crossclaims against

8  **OCIC**, **Zurich**, **MCC**, and **AGLIC**. (Docs. 153; 154; 155.) Last, **Zurich** has crossclaims

9  against **AIG**, **OCIC**, **LMIC**, and **ASIC**. (Doc. 120.) Consistent with the parties' general

10  disregard for procedural rules and this Court's orders (see Docs. 319; 328; 332; 353), neither

11  **AIG** nor **Zurich** renewed their respective counterclaims or crossclaims following **Plaintiffs'**

12  Second Amended Complaint (Doc. 197); **AIG** did not even bother to file an Answer.

13        The interests of the parties are relatively simple by comparison: three sets of parties

14  assert they are entitled to reimbursement for the costs of defending Del Webb. Specifically,

15  **Plaintiffs**, **AIG**, and **Zurich** (collectively "**Claimants**") each allege that they contributed to

16  the defense of Del Webb and that they are entitled to partial or total reimbursement of their

17  contributions. (Compare Doc. 120 at 11, with Doc. 153 at 3-4, with Doc. 154 at 3-4, with

18  Doc. 155 at 4-5.) **Claimants** all seek the exact same three forms of declaratory relief: a

19  declaration of all parties' defense duties; apportionment of the parties' respective shares of

20  defense costs according to the doctrines of equitable contribution and/or equitable

21  subrogation; and a declaration that **Claimants** are entitled to reimbursement and an order

22  compelling such reimbursement. (Compare Doc. 120 at 11-13, with Doc. 153 at 3-8, with

23  Doc. 154 at 3-8, with Doc. 155 at 4-9, with Doc. 197 at 12-16). The Court begins with the

24  declaration of the all the parties' duty to defend Del Webb.

25        *The Duty to Defend*

26        Insurers are generally "obligated to assume the defense of" an action brought against

27  an insured when the complaint, "upon its face[,] alleges facts which come within the

28  coverage of the liability policy." Kepner v. W. Fire Ins. Co., 109 Ariz. 329, 331, 509 P.2d

222, 224 (1973) (quoting C. T. Drechsler, Annotation, <u>Allegations in third person's action against insured as determining liability insurer's duty to defend</u>, 50 A.L.R. 2d 458, § 3 (1956)). This "duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable." <u>Regal Homes, Inc. v. CNA Ins.</u>, 217 Ariz. 159, 154, 171 P.3d 610, 615 (App. 2007) (quoting <u>INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.</u>, 150 Ariz. 248, 255, 722 P.2d 975, 982 (App. 1986)). Absent language to the contrary, "if any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the entire suit, because it is impossible to determine the basis upon which the plaintiff will recover (if any) until the action is completed." <u>Lennar Corp. v. Auto-Owners Ins. Co.</u>, 214 Ariz. 255, 261, 151 P.3d 538, 544 (App. 2007) (quoting <u>W. Cas. & Sur. Co. v. Int'l Spas of Ariz., Inc.</u>, 130 Ariz. 76, 79, 634 P.2d 3, 6 (App. 1981)). However, the duty to defend may be obviated if uncontested "facts plainly take the case outside policy coverage." <u>Transamerica Ins. Grp. v. Meere</u>, 143 Ariz. 351, 360, 694 P.2d 181, 190 (1984) (citing <u>Kepner</u>, 109 Ariz. at 331, 509 P.2d at 224).

A declaration of the remaining parties defense duties serves a useful purpose in clarifying the legal relations at issue as it removes uncertainty surrounding an immediate and real dispute over the parties' respective insurance obligations. By not successfully challenging the duty to defend, the parties effectively acknowledged that the alleged facts could establish liability under all of their respective primary policies.[2] Accordingly, the Court hereby declares that all remaining parties share a duty to defend Del Webb under all their respective policies according to the levels of coverage therein. One corollary of this declaration is that each party also has the duty to indemnify for covered liabilities proven at trial, <u>see</u> <u>Colorado Cas. Ins. Co. v. Safety Control Co., Inc.</u>, 230 Ariz. 560, 568, 288 P.3d 764, 772 (App. 2012), subject to the policies' terms, <u>see</u> <u>Cal. Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.</u>, 185 Ariz. 165, 168-69, 913 P.2d 505, 508-09 (App. 1996).

---

[2] **St. Paul**'s acknowledgment is that liability could exist in the interstices of subcontractor policy coverage. See <u>Lennar Corp.</u>, 214 Ariz. at 261, 151 P.3d at 544.

1        *Equitable Contribution*[3]

2        The doctrine of equitable contribution is based on the principle that where two or

3  more insurers share the same duty to an insured and less than all of them perform their share

4  of that duty, then the performing insurers are entitled to contribution from the

5  underperforming insurers. Nat'l Indem. Co. v. St. Paul Ins. Cos., 150 Ariz. 458, 459, 724

6  P.2d 544, 545 (1986). The duty to defend is shared by and among insurers who issued

7  policies that cover an insured for the facts alleged in the complaint, even if the policies insure

8  against distinct risks. Nucor Corp. v. Employers Ins. Co. of Wausau, 231 Ariz. 411, 421, 296

9  P.3d 74, 84 (App. 2012) (quoting Certain Underwriters at Lloyd's London & Excess Ins. Co.

10  v. Mass. Bonding & Ins. Co., 230 P.3d 103, 113 (Or. Ct. App. 2010)) (concluding right to

11  equitable contribution arises where insurers "had the same obligation to defend [the insured]"

12  but one insurer "discharged a disproportionate share of that obligation); Cont'l Cas. Co. v.

13  Signal Ins. Co., 119 Ariz. 234, 238, 580 P.2d 372, 376 (App. 1978) ("The duty to defend is

14  not synonymous with, nor determinative of the question of coverage."). The remaining

15  parties share the duty to defend pursuant to the Court's declaration that the allegations in the

16  complaint, if true, establish coverage under all the policies.

17        As to each party's proportionate share of defense costs, the method of calculating

18  proration is left to the Court's discretion. Nucor, 231 Ariz. at 422, 296 P.3d at 85. Arizona

19  favors the "policy limits" approach in which each policy's pro rata share is equal to the

20  quotient obtained by dividing the policy's limit by the sum of all applicable policy limits.

21  AMHS Ins. Co. v. Mut. Ins. Co. of Ariz., 258 F.3d 1090, 1102 (9th Cir. 2001) (affirming

22  district court's application of Arizona's "policy limits" approach), cited with approval in

23

24        [3] While **Claimants** plead equitable contribution and equitable subrogation as
alternatives, the former is relief afforded by the latter. "Under the principle of equitable

25  *subrogation*," a performing insurer is entitled to "compel *contribution*" from a

26  nonperforming insurer. Nat'l Indem. Co. v. St. Paul Ins. Cos., 150 Ariz. 458, 459, 724 P.2d

27  544, 545 (1986) (emphasis added); see Nucor Corp. v. Employers Ins. Co. of Wausau, 231
Ariz. 411, 420-21, 296 P.3d 74, 83-84 (App. 2012) (emphasis added) (explaining claim for

28  "*equitable contribution*" arises when shared duty is not equally borne by both insurers).

1  Nucor, 231 Ariz. at 422, 296 P.3d at 85. The Court finds this approach suitable for

2  calculating the pro rata shares of defense costs in a case where, as here, several insurance

3  carriers each issued multiple polices insuring a single entity that was served with a complaint

4  alleging facts that triggered the defense duties under all the policies. A party's pro rata share

5  of the costs of defense will generally equal the sum of policy limits for each primary policy

6  that party issued divided by the sum of policy limits for all primary policies issued. Assuming

7  the absence of indemnity costs, which would not be shared among those insuring against

8  different risks, see Granite State Ins. Co. v. Emp'rs Mut. Ins. Co., 125 Ariz. 275, 278, 609

9  P.2d 90, 93 (App. 1980), all the primary policies would exhaust simultaneously.

10       This result is equitable with one exception. Atrium satisfied its contractual insurance

11  obligations by purchasing two policies instead of just one: primary CGL policies issued by

12  **Zurich** and excess CGL policies issued by **AGLIC**. Under Arizona law, "a specific excess

13  policy attaches upon the exhaustion of its underlying primary policy." AMHS Ins. Co., 258

14  F.3d at 1099. Since the **AGLIC** policies are specific to the underlying **Zurich** policies and

15  were purchased to provide the same level and amount of coverage as all the other primary

16  CGL policies issued to subcontractors, the Court finds that **AGLIC**'s policies are excess only

17  with respect to the Atrium-**Zurich** policies.[4] In the interest of equity, the Atrium-**Zurich** and

18  Atrium-**AGLIC** policies will be concatenated so that the combined policy limits for each

19  **Zurich**-**AGLIC** policy pair will be treated as a single primary policy. As a result, **AGLIC**'s

20  duty to defend (and therefore contribute) will be, or was,[5] triggered when each concatenated

21  policy expends the limits of the underlying **Zurich** policy. Thereafter, **AGLIC** is responsible

22  for the concatenated policies' pro rata share.

23

---

24       [4] The excess policy issued by **St. Paul** is a true excess policy and will be triggered

25  upon exhaustion of the underlying primary insurance that **St. Paul** issued to Del Webb.

26       [5] Although the underlying Atrium-**Zurich** policies were exhausted (Docs. 222 ¶ 27;

27  241 ¶ 27), they may be reinvigorated by reimbursement. If so, and **AGLIC** has contributed
to defense costs, then **AGLIC** is entitled to complete reimbursement. See Twin City Fire Ins.

28  Co. v. Burke, 204 Ariz. 251, 256, 63 P.3d 282, 286 (2003).

1    A declaration of the method for calculating proration serves a useful purpose in

2    clarifying the parties' legal relations at issue. Given that all the remaining parties share the

3    duty to defend Del Webb in the underlying action, calculating the parties' policy limit

4    quotients should, as a practical matter, be a relatively straightforward exercise in addition and

5    division. Computing each party's pro rata share involves multiplication; determination of

6    who has contributed more or less than their share involves subtraction. A party that has

7    contributed more than its pro rata share is entitled to reimbursement from parties that have

8    contributed less than their pro rata shares. The fact that some of the remaining parties have

9    settled with some but not all other remaining parties does not change this result because

10   settlement, in and of itself, does not preclude claims for equitable contribution. See Cal. Cas.

11   Ins. Co., 185 Ariz. at 170, 913 P.2d at 510. It would, in fact, be inequitable to deny

12   performing insurers contribution from underperforming insurers who settled to avoid having

13   to contribute their fair share of defense costs. See Nucor Corp., 231 Ariz. at 422, 296 P.3d

14   at 85 (citing Sharon Steel Corp. v. Aetna Cas. and Sur. Co., 931 P.2d 127, 139 (Utah 1997))

15   (ruling in context of nonperforming insurer settling with insured).

16       *Further Declaratory Relief*

17       Given the declarations concerning defense duties and the method of calculating pro

18   rata shares, the relations at issue have been clarified and the underlying controversy has been

19   substantially quieted. The only remaining controversy is that some parties are entitled to

20   reimbursement from other parties. Toward that end, **Claimants** request the Court compute

21   the parties' proportional shares, calculate the difference between proportional share and

22   amount contributed, and issue an order compelling reimbursement. The Court declines to

23   grant this relief.

24       The remaining requested declaration would not effectively settle the underlying

25   controversy, but only addresses some parties' (**Claimants**') entitlement to contribution for

26   performance of duties up to this point. The current ledger is a mere snapshot of what the

27   remaining parties owe or are owed, yet additional costs of defense (and indemnity) are

28   inevitably forthcoming. Thus, even if the Court exercised its discretion to render the

1    remaining declaratory relief, the parties' respective obligations and entitlement regarding

2    equitable contribution would not be settled. To the contrary, there will almost certainly be

3    additional disputes as the alignment of performing and underperforming insurers fluctuates.

4         Further, rulings in the underlying civil litigation are still materially affecting the

5    parties respective duties to defend. Depending on the progression of the trial and evitable

6    appeals, further declarations run the risk of binding a party in a manner inconsistent with that

7    party's true obligation. For example, the settlement agreement between two sets of

8    **Claimants**, one of which is no longer a party to the action, was delayed "due to a ruling in

9    the [underlying] lawsuit that affects . . . participation in Del Webb's defense." (Doc. 364 at

10   2.) The Court is especially wary about rendering a declaration that conflicts with a state court

11   ruling. See R.R. Street & Co., 656 F.3d at 975.

12        It may be argued that the Court should stay the proceedings until the underlying

13   actions reach sufficient finality, or alternatively, that the Court should issue the requested

14   relief, maintain the action, and intermittently issue orders compelling the parties to pay one

15   another while the underlying civil suit winds to a close and finds its way up and down the

16   appeals process before reaching finality. Both arguments rest on the same premise: that one

17   or more parties will deny a now certain duty to contribute a calculable sum toward the costs

18   of defense. The mere possibility that a party might not perform a previously uncertain duty,

19   without more, is insufficient to invoke the jurisdiction of federal courts. The Court certainly

20   would not maintain a declaratory judgment action premised on possibility.

21        The Court finds that the declarations made herein clarify the parties' relations and

22   settle the underlying controversy to the greatest extent practicable given the circumstances.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

- 12 -

1   Accordingly,

2   **IT IS HEREBY ORDERED** declaring that **St. Paul**, **Charter Oak**, **Travelers**,

3   **Zurich**, **MCC**, **AGLIC**, **AHAC**, **CIIC**, **LIC**, **LMIC**, **OCIC**, and **ASIC**, all have a duty to

4   defend Del Webb as described in this Order.

5   **IT IS FURTHER ORDERED** declaring that the proportional shares of defense costs

6   for **St. Paul**, **Charter Oak**, **Travelers**, **Zurich**, **MCC**, **AGLIC**, **AHAC**, **CIIC**, **LIC**, **LMIC**,

7   **OCIC**, and **ASIC** are equal to their respective policy limits quotients as described in this

8   Order.

9   **IT IS FURTHER ORDERED** that the Clerk of Court terminate the case.

10   DATED this 15th day of August, 2014.

11

12

13   Stephen M. McNamee
     Senior United States District Judge

- 13 -